IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | CASE NO. BK08-40794-TLS |
| CARLOS I. JUAREZ, ) | A08-4055-TLS |
| a.k.a. CARLOS I. JUAREZ GAVIDIA, ) | |
| ) | CH. 7 |
| Debtor(s). ) | |
| U.S. BANK, N.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| CARLOS I. JUAREZ, ) | |
| a.k.a. CARLOS I. JUAREZ GAVIDIA, ) | |
| ) | |
| Defendant. ) | |

ORDER

This matter is before the court on the plaintiff's motion for summary judgment (Fil. #8) and objection by the debtor (Fil. #19). Sara E. Miller represents U.S. Bank, and Derek L. Mitchell is counsel of record for the debtor, although he did not file a response to the motion.[1] Evidence was filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

U.S. Bank extended consumer credit to the debtor by issuing a Visa credit card to him. The balance owing on the credit account as of the entry of the order for relief on April 10, 2008, was $10,109.32. U.S. Bank alleges that within 70 days prior to entry of the order for relief, the debtor incurred more than $6,000.00 in cash advances on the account, and in December 2007 and January 2008 (more than 70 days before the petition date), the debtor incurred an additional $1,515.00 in cash advances. With interest, the cash advances totaled $7,810.55 as of the date of the entry of the order for relief. U.S. Bank contends that the debtor did not intend, or could not reasonably have intended, to repay these amounts in light of his financial circumstances at the time he incurred the debt, and that this debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (C).

---

[1] The debtor's pro se response to the summary judgment motion states he could not afford to pay counsel to represent him in this matter and signed a "release form" for the attorney, but the record does not reflect that Mr. Mitchell has requested permission to withdraw from representation.

As discussed below, the motion is granted in part and denied in part. The motion is granted as to the cash advances incurred within 70 days prior to bankruptcy filing and is denied as to the cash advances incurred more than 70 days before the petition date.

The Bankruptcy Code prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]" 11 U.S.C. § 523(a)(2)(A). Preventing the discharge of debts fraudulently incurred demonstrates the basic purpose of the Bankruptcy Code, which is to afford relief to honest but unfortunate debtors. *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998).

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Aviation Charter, Inc. v. Aviation Research Group/US*, 416 F.3d 864, 868 (8th Cir. 2005); *Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.)*, 371 F.3d 397, 401 (8th Cir. 2004); *Williams v. Marlar (In re Marlar)*, 267 F.3d 749, 755 (8th Cir. 2001). To withstand a motion for summary judgment, the nonmoving party must submit "sufficient evidence supporting a material factual dispute that would require resolution by a trier of fact." *Austin v. Minnesota Mining & Mfg. Co.*, 193 F.3d 992, 994 (8th Cir. 1999) (quoting *Hase v. Missouri Div. of Employment Sec.*, 972 F.2d 893, 895 (8th Cir. 1992), *cert. denied*, 508 U.S. 906 (1993)).

The bank's motion for summary judgment is based on the debtor's failure to respond to interrogatories and requests for admission. Under Federal Rule of Civil Procedure 36 and Federal Rule of Bankruptcy Procedure 7036, a matter is admitted unless, within 30 days after being served, the party to whom the request for admission is directed serves a written answer or objection on the requesting party.

The discovery requests were mailed to the debtor's attorney on September 16, 2008. No response was received. The matters deemed admitted include the debtor's use of the credit card issued by the bank to obtain cash advances from December 11, 2007, through March 17, 2008; the debtor's financial situation during that time period was such that his total monthly expenses exceeded his total monthly income; and the debtor's retention of the benefit of the cash advance transactions.

On December 3, 2008, counsel for U.S. Bank received a letter from the debtor with unsigned answers to the interrogatories. He also sent a copy of the letter to the court as his objection to the summary judgment motion. In those materials, he indicates that he was injured in a car accident in August 2007, which caused him to incur medical bills and affected his ability to work at a second job. He also has child support payments and expenses related to his divorce, in addition to his regular monthly bills.

U.S. Bank provided account statements covering the debtor's credit card activity from November 17, 2007, through May 19, 2008. During that time, the account balance grew from $2,620.31 to $10,109.32. Between late November 2007 and early March 2008, the debtor's monthly payments approximated the minimum payment due, which ranged from $78.00 to $91.00. At the same time, he was taking cash advances of $700.00 to $800.00 each month. In February 2008, his cash advances became larger and more frequent, and between February 14 and March 17, he obtained nine advances totaling $6,100.00. These transactions put his account balance very near the credit limit of $10,000.00.

The debtor's Schedule I indicates he had gross monthly income from his employment at Swift Beef Company of $2,710.11 and net monthly income of $1,400.21 at the time he filed bankruptcy. His Schedule J shows average monthly expenditures of $1,398.26, leaving $1.95 available at the end of each month. According to his Schedule F, he has $21,232.82 in unsecured debt. All of it is described as "miscellaneous consumer expense" and appears to be outstanding balances on bank and retail credit accounts.

Because the bank's allegations concern two categories of transactions, affected by separate statutory sections, I will address each in turn.

I.    The December 2007 and January 2008 cash advances.

With regard to the $1,515.00 in cash advances that were obtained more than 70 days before the entry of the order for relief and that therefore fall outside the provisions of § 523(a)(2)(C)(i)(II), the bank argues for nondischargeability under § 523(a)(2)(A) because the debt was fraudulently incurred. Specifically, the bank alleges that by using the credit card, the debtor represented he would repay all amounts owed, and the bank relied to its detriment on this representation when extending credit to him.

To establish fraud within the context of § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. *Universal Bank, N.A. v. Grause (In re Grause)*, 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000) (citing *Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340, 342 n.1 (8th Cir. 1987), as supplemented by *Field v. Mans*, 516 U.S. 59 (1995)); *Blue Skies, Inc. v. Preece (In re Preece)*, 367 B.R. 647, 652 (B.A.P. 8th Cir. 2007).

The case law in this circuit relies on the legal fiction that credit card use carries the implied representation that the buyer intends to pay the charge. *See, e.g.*, *Chase Bank USA, N.A. v. Swanson (In re Swanson)*, ___ B.R. ___, 2008 WL 5192247, at *4 (Bankr. N.D. Iowa Nov. 13, 2008); *G.E. Money Bank v. Wyble (In re Wyble)*, 387 B.R. 603, 607-08 (Bankr. W.D. Mo. 2008); *Citibank South Dakota v. Meseck (In re Meseck)*, 284 B.R. 901, 906 (Bankr. N.D. Iowa 2002); *AT & T Universal Card Servs. v. Fronning (In re Fronning)*, 222 B.R. 614, 617 (Bankr. D. Neb. 1998); *AT & T*

*Universal Card Servs. v. Ellingsworth (In re Ellingsworth)*, 212 B.R. 326, 334 (Bankr. W.D. Mo. 1997); *FCC Nat'l Bank v. Willis (In re Willis)*, 190 B.R. 866, 868 (Bankr. W.D. Mo.), *aff'd*, 200 B.R. 868 (W.D. Mo.1996); *Norwest Bank Iowa, N.A. v. Larson (In re Larson)*, 136 B.R. 540, 544 (Bankr. D.N.D. 1992).

"Once the law implies representation, the first three elements of the § 523(a)(2)(A) test interlock," so the issue boils down to whether the debtor intended to repay and whether the creditor justifiably relied. *Swanson*, 2008 WL 5192247 at *4-5 (citing *Meseck*, 284 B.R. at 906). A non-exhaustive list of factors to be considered when evaluating whether fraudulent intent should be inferred from the circumstances were set forth by the Eighth Circuit's Bankruptcy Appellate Panel in *Grause* and include:

> 1) the length of time between the charges made and the filing of the bankruptcy;
> 2) whether an attorney has been consulted concerning the filing of bankruptcy before the charges were made;
> 3) the number of charges made;
> 4) the amount of the charges;
> 5) the financial condition of the debtor at the time the charges were made;
> 6) whether the charges were above the credit limit of the account;
> 7) whether the debtor made multiple charges on the same day;
> 8) whether or not the debtor was employed;
> 9) the debtor's prospects for employment;
> 10) the debtor's financial sophistication;
> 11) whether there was a sudden change in the debtor's buying habits; and
> 12) whether the purchases were made for luxuries or necessities.

245 B.R. at 99.

Many of the questions can be answered by referring to the credit card statements. For instance, it is clear from the account statements provided that the debtor obtained one cash advance of $800.00 on December 11, 2007, when the balance owed on the account was $2,620.31. He made the equivalent of one minimum monthly payment in early January 2008 and obtained a single cash advance that month of $715.00. The account balance for that month was $3,372.26, well below the $10,000.00 credit limit. The only transactions shown on the account statements are the cash advances, payments, and finance charges. It does not appear that the debtor used this card for purchases during the relevant time period. The debtor states in his unsworn answers to interrogatories that he first contacted an attorney about filing bankruptcy during the third week of March 2008, after these debts were incurred. There is no evidence of the purpose of the advances or whether these two cash advances represented a sudden change in his credit usage. Moreover, the requests for admission – which, as explained below on page 6, are deemed admitted – establish that the debtor was insolvent and did not have the present ability to repay the advances. Nevertheless, an inability to pay is not the same as an intention not to pay. *See Star Bank, N.A. v. Stearns (In re Stearns)*, 241 B.R. 611, 622-23 (Bankr. D. Minn. 1999) (recognizing that debtors in financial straits often resort to credit cards, but without proof of specific contemplation of non-repayment, a

nondischargeability judgment is unfounded; financially strapped persons who use credit cards "may not do so wisely, for any of many reasons, but that is a far cry from saying that they are doing so fraudulently.").

The Eighth Circuit Court of Appeals has cautioned that courts must be circumspect about granting summary judgment when a party's mental state or intent is at issue because that generally is an issue for the fact-finder. *United States v. One 1989 Jeep Wagoneer, V.I.N. 1J4GS5874KP105300*, 976 F.2d 1172, 1176 (8th Cir. 1992); *McGee v. Hester*, 724 F.2d 89, 91 (8th Cir. 1983) ("Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles."); *Peoples State Bank of Albia v. Knowles (In re Knowles)*, 337 B.R. 680, 682-83 (Bankr. S.D. Iowa 2005). Therefore, summary judgment is not appropriate on this issue of whether the debtor obtained $1,515.00 in cash advances from the plaintiff by use of fraud or false representations.

II.     The February and March 2008 cash advances.

For purposes of determining whether false pretenses, a false representation, or actual fraud exists, the Bankruptcy Code provides that cash advances totaling more than $825.00 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 70 days before the order for relief are presumed to be nondischargeable. § 523(a)(2)(C)(i)(II). For purposes of this section:

> The term "credit" means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.
> . . . .
> The adjective "consumer," used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.
>
> The term "open end credit plan" means a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance. A credit plan which is an open end credit plan within the meaning of the preceding sentence is an open end credit plan even if credit information is verified from time to time.

§ 523(a)(2)(C)(ii)(I); 15 U.S.C. § 1602(e), (h) and (i).

The debtor's use of the credit card account at issue in this case meets these definitions.

When the creditor has established the elements of § 523(a)(2)(C)(i)(II), the rebuttable presumption of fraud in that paragraph transforms the burden into one of proving the debt is dischargeable and shifts that burden to the debtor. *Swanson*, 2008 WL 5192247, at *2. The debtor's

intent then becomes the only relevant factor and the debtor must prove that he did not incur the debt in contemplation of bankruptcy. *Id.*; *Ellingsworth*, 212 B.R. at 340.

The 70-day period under § 523(a)(2)(C)(i)(II) began on January 31, 2008. During that time, the debtor obtained cash advances on the U.S. Bank account of $6,100.00. That amount is presumed to be nondischargeable unless the debtor can prove otherwise. As noted above, his unsigned answers to interrogatories indicate he incurred medical expenses as a result of a car accident in 2007, and he went through a divorce, began paying child support, and continued making mortgage and vehicle payments. He states that medical restrictions arising from the car accident prevented him from applying for a second job, but there is no evidence that the accident affected his continuing employment at Swift Beef Company. More importantly, there is no evidence before the court as to what the debtor used the money for or why he needed to obtain more than $6,000.00 in cash in the eight weeks immediately preceding his bankruptcy filing, particularly as he must have known he had little or no likelihood of repaying such a large amount when he had no disposable income to speak of. In *Ellingsworth*, for example, the debtors used a credit card to obtain $2,000.00 in cash advances in the 60 days prior to filing bankruptcy. They testified that much of that amount was used for household and family expenses, but they did not substantiate those expenses at trial. The court found that the advances were taken while the debtors had no intention to repay the debt and were therefore nondischargeable. 212 B.R. at 340-41.

In the present case, the "evidence" submitted by the debtor in opposition to the bank's motion is interesting but not particularly helpful. Federal Rule of Bankruptcy Procedure 7033 and Federal Rule of Civil Procedure 33(b)(3) and (5) require each interrogatory to be answered separately and fully in writing under oath. They must also be signed by the person who answered them. The responses submitted by the debtor were not made under oath and were not signed. *Walls v. Paulson*, 250 F.R.D. 48, 52 (D.D.C. 2008) (stating that the federal procedural rules are not optional and Rule 33(b)(5) "could not be more clear" about requiring interrogatory answers to be signed).  In addition, the debtor did not respond at all to the bank's written requests for admission, and Federal Rule of Civil Procedure 36(a)(3) requires that matters not answered or objected to are deemed admitted.

The circumstances of nondischargeability under § 523(a)(2)(C) are less subjective than under § 523(a)(2)(A), and when the burden of proof shifted to the debtor, he was unable to overcome the statutory presumption of nondischargeability. For that reason, the bank's motion for summary judgment is granted as to the portion of the debt incurred in February and March 2008.

IT IS ORDERED:

1.    U.S. Bank's motion for summary judgment (Fil. #8) is granted as to the $6,100.00 in cash advances obtained by the debtor within the 70 days prior to entry of the order for relief, plus interest on that amount.

2.    U.S. Bank's motion for summary judgment (Fil. #8) is denied as to the $1,515.00 in cash advances obtained by the debtor in December 2007 and January 2008.

      3.      The parties shall file their joint preliminary pretrial statement on or before February 17, 2009.

      4.      This is not a final appealable order. Judgment will be entered after resolution of the remaining issues.

DATED: January 15, 2009.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Sara E. Miller
    Carlos I. Juarez Gavidia
    Derek L. Mitchell
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.